IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE AVINA, | | |
| | Plaintiff, | No. CIV S-02-2661 FCD KJM P |
| vs. | | |
| J.C. MEDELLIN, et al., | | ORDER AND |
| | Defendants. | FINDINGS AND RECOMMENDATIONS |
| _____/ | | |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Plaintiff's claims relate to his identification as a member of a prison gang by California Department of Corrections and Rehabilitation (CDCR) officials. The remaining defendants have filed a motion to dismiss for failure to exhaust administrative remedies and for summary judgment.[1]

I. Failure to Exhaust

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d

---

[1] In their motion, defendants assert they are entitled to summary judgment with respect to plaintiff's claims arising under state law. Mem. P. & A. at 15:16-16:10. This action is not currently proceeding as to any claims arising under state law. See May 2, 2005 Order at 2:6-9.

1

1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1120. If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Id.

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). California prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a prisoner has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5. All steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him; exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002). Defendants bear the burden of proving plaintiff's failure to exhaust. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied sub nom, Alameida v. Wyatt, 540 U.S 810 (2003).

With respect to the level of specificity required in a prisoner grievance, in order for the court to find that administrative remedies have been exhausted with respect to a particular claim, the Supreme Court recently has held that the prisoner need not always identify the particular defendants to his claim in the grievance. Jones v. Bock, No. 05-7058, 2007 WL 135890, at *19 (Jan. 22, 2007). Previously, in Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001), the United States District Court for the Southern District of California recognized that the basic premise of the exhaustion requirement is to put prison officials on notice of any potential § 1983 claims. Jones confirms the fundamental notice purpose of exhaustion, to the extent consistent with what an administrative grievance procedure requires.

/////

See Jones, 2007 WL 135890, at *18 (benefits of exhaustion include allowing a prison to address complaints before being subjected to suit).

At a minimum, then, the actions forming the basis of a lawsuit must in some way be brought to the attention of corrections officials before the court may deem administrative remedies exhausted.

The parties appear to agree that the only grievance decided at the Director's Level concerning any of the claims at issue in this action was filed by plaintiff on March 14, 2000 and decided at the Director's Level on December 28, 2001.[2]  Defs.' Exs. 16-18.  After reviewing the grievance and the responses issued at the first, second, and Director's levels is clear that the following facts or allegations were brought to the attention of the CDCR through the Director's Level review:

1. On March 27, 1998, defendant Fischer received a "gang validation package" from defendant Knipp concerning whether plaintiff is a member of the "Northern Structure" (NS) prison gang.  Defs.' Ex. 16 at 1.

2. On July 15, 1998, defendant Fischer found that the information in the "package" was insufficient to validate plaintiff as a member of the NS.  Id. at 3.

3. Included in the package was a "CDC 128-B" dated February 27, 1998.  Id.  In this document, defendants Rocha and Knipp asserted that plaintiff was found to possess NS training materials.  Defs.' Ex. 1.

4. Fischer found explicitly that the documents referenced in the "CDC 128-B" dated February 27, 1998 were not NS training materials.  Defs.' Ex. 16 at 3.

---

[2] On February 5, 2007, plaintiff submitted a copy of another grievance he filed related to the claims at issue in this action.  Plaintiff submitted the grievance to prison officials on April 22, 2002.  Plaintiff does not allege he received a Director's Level Decision with respect to this grievance.  In any case, the issues raised in the April 2002 grievance are similar enough to the issues raised in the March 14, 2000 grievance that even if plaintiff exhausted administrative remedies with respect to the April 2002 grievance, that grievance would not serve to exhaust administrative remedies with respect to any issues not otherwise covered by the March 14, 2000 grievance.

5. The documents referenced in the "CDC 128-B" dated February 27, 1998 were also referenced in a "CDC 128-B" dated May 2, 1997. Id. In this latter document, defendant Medellin indicates that he was the one who actually found plaintiff to be in possession of the documents. Defs.' Ex. 7. He also suggests that the documents he found are NS training documents. Id.

6. Another "gang validation package" was submitted to defendant Fischer on December 13, 1999. Defs.' Ex. 16 at 3. This time the "CDC 128-B" dated May 2, 1997 and authored by defendant Medellin was included in the package. Id. The package was prepared by defendant Pandovan. Id.; Second Am. Compl. ¶ 56.

7. Defendant Fischer validated plaintiff as a member of the NS based on the information provided in the December 13, 1999 "package." Defs.' Ex. 16 at 3.

8. Defendant Pandovan should not have included the "CDC 128-B" dated May 2, 1997 in the December 13, 1999 gang validation package and Defendant Fischer should not have relied on it in validating plaintiff as a member of the NS because the information referenced had previously been deemed insufficient. Id.

9. After Fischer's July 15, 1998 decision that plaintiff had not been validated as a member of the NS, the "CDC 128-B" dated May 2, 1997 and the "CDC 128-B" dated February 27, 1998 should not have been included in any subsequent validation package. Id. at 1.

10. After Fischer's July 15, 1998, decision it should have been noted in plaintiff's central file that the materials referenced in the "CDC 128-B" dated May 2, 1997 and the "CDC 128-B" dated February 27, 1998 were rejected as evidence of NS validation. Id. at 3.

11. At the Director's Level, the reviewing officer found that all documents used to validate plaintiff as a member of the NS were used properly. Defs.' Ex. 18 at 4.

The court finds that plaintiff has exhausted administrative remedies with respect to the following claims because, as indicated above and applying the holding of Jones v. Bock, the "Director's Level" was placed on notice of these claims through the grievance process:

4

1. Defendant Fischer violated plaintiff's right to due process by validating him as a gang member on December 13, 1999. Second Am. Compl. ¶ 57.

2. Defendant Rosario violated plaintiff's right to due process by affirming defendant Fischer's decision on December 17, 1999. Id. ¶¶ 62-65.

3. Defendant Meske violated plaintiff's right to due process on December 30, 1999 by validating plaintiff as a gang member based on the same information used by defendant Fischer. Id. ¶ 70.

4. Defendants McEnroe, Philips, Stockman, Brown, Sullivan and Loflin denied plaintiff his right to due process by validating plaintiff as a gang member through the inmate grievance process utilizing the same information as reviewed by defendant Fischer. Id. ¶¶ 89-91, 96-97.

Plaintiff has not exhausted administrative remedies with respect to any other remaining claims. With respect to plaintiff's First Amendment claims, prison officials were never put on notice of any facts that might provide the basis of a claim arising under the First Amendment.[3] The same applies to plaintiff's Eighth Amendment claims. Plaintiff never complained to prison officials regarding conditions of confinement that plaintiff now claims resulted in cruel and unusual punishment. Plaintiff merely complained about the gang validation process.[4]

---

[3] In any case, it is clear to the court that plaintiff fails to state a claim upon which relief can be granted under the First Amendment. Plaintiff seems to suggest that his First Amendment rights were violated because he suffered adverse consequences as a result of possessing documents later determined to indicate that plaintiff was a member of a prison gang. Second Am. Compl. ¶¶ 122-123. However nothing suggests plaintiff suffered consequences for mere possession of anything. The possession of the documents at most was evidence that plaintiff belonged to a prison gang. Plaintiff does not suggest that he has a First Amendment right to belong to a prison gang.

[4] The court need not specifically identify all of the claims that should be dismissed for failure to exhaust administrative remedies, however the following claims warrant further discussion. Plaintiff asserts in his second amended complaint that defendant Medellin violated his right to due process by authoring the "CDC 128-B" dated May 2, 1997. Second Am. Compl. ¶¶ 33-39. However, plaintiff never challenged the validity of the information provided in the

In light of the foregoing the court will recommend that defendants' motion to dismiss for failure to exhaust state court remedies be granted except as to the denial of due process claims identified above.

II. Motion For Summary Judgment

    A. Request For *In Camera* Review Of Defendants Exhibits 9 and 10

Exhibits 9 and 10 presented by defendants in support of their motion for summary judgment are copies of reports issued by correctional officers. In those reports, the correctional officers identify prison inmates and indicate that those inmates have identified plaintiff as a member of the NS. Defendants asks that the court consider this material even though defendants have not served copies of the exhibits on plaintiff; defendants also ask that the court seal the exhibits for a period of seventy-five years after the court has considered them. Defendants make this request based on their position that the safety of the inmates identified in the reports as informants would be placed in jeopardy if plaintiff or other prison inmates learned their identity. Plaintiff objects to defendants' motion.

The court has not been able to identify Supreme Court or Ninth Circuit precedent articulating a clear standard concerning when a trial court, in rendering a decision on a dispositive motion in a civil matter, may consider evidence that one party has not examined based on the proffering party's invocation of safety reasons.[5] The question presented by defendants' motion is a difficult one, which this court would be prepared to address if needed. In this case, however, the court need not resolve defendants' motion for *in camera* review in order

---

"CDC 128-B" dated May 2, 1997 through the grievance process. Plaintiff also asserts defendant Knipp violated his right to due process by authoring the "CDC 128-B" dated February 27, 1998. Second Am. Compl. ¶¶40-49. Again, plaintiff never challenged the contents of the February 27, 1998 "CDC 128-B" through the grievance process.

[5] There is Ninth Circuit authority suggesting that an *in camera* review such as the one sought by defendants is permissible. Zimmerlee v. Keeney, 831 F.2d 183, 186-87 (9th Cir. 1987). However, there does not appear to be any authority suggesting when such a motion for *in camera* review should be granted.

to resolve their motion for summary judgment. Therefore, defendants' motion will be denied and the court will not consider exhibits 9 and 10. Twenty days after entry of this order, the court will destroy the copies of exhibits 9 and 10 submitted by defendants. If, however, defendants would like the copies returned to them, counsel shall contact chambers before the expiration of the twenty day period.

### B. Request For Appointment Of Counsel

In his opposition to defendants' motion for summary judgment, plaintiff requests the appointment of counsel. Opp'n at 1. The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. <u>Mallard v. United States Dist. Court</u>, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). <u>Terrell v. Brewer</u>, 935 F.2d 1015, 1017 (9th Cir. 1991); <u>Wood v. Housewright</u>, 900 F.2d 1332, 1335-36 (9th Cir. 1990). In the present case, the court does not find the required exceptional circumstances. Plaintiff's request for the appointment of counsel will therefore be denied.

### C. Plaintiff's February 20, 2007 Request For Leave To File Supplemental Objections

Plaintiff asks that the court consider the supplemental objections to defendants' statement of undisputed facts filed by plaintiff on February 20, 2007. Good cause appearing, plaintiff's request will be granted.

### D. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////
/////
/////
/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On June 9, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

E.  Analysis

As indicated above, plaintiff's remaining claims all concern whether plaintiff's right to due process was violated by his validation as a member of a prison gang.  Defendants argue that they are entitled to summary judgment with respect to plaintiff's remaining due process claims because each time plaintiff was validated as an NS member, there was "some evidence" to support the validation.[6]

In Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003), the Ninth Circuit held that a determination that a CDCR inmate is a gang member, and therefore appropriate for assignment to an indefinite term in segregated housing, must be supported by "some evidence."  The requirement of "some evidence" sets a low bar, consistent with the recognition that assignment of inmates within prisons is "essentially a matter of administrative discretion," subject to "minimal legal limitations."  Id. (citing Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986) with respect to the minimal limitations).  Even just one piece of evidence may be sufficient to meet the "some evidence" requirement, if that evidence has "sufficient indicia of reliability."[7]  Id. at 1288; Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) ("relevant question is whether there is *any* evidence

---

[6] To the extent plaintiff claims that his right to due process was denied by any remaining defendant through the validation process on any ground other than the decision to validate plaintiff was not based on "some evidence," and to the extent plaintiff has exhausted administrative remedies with respect to such claims, plaintiff's second amended complaint fails to state a claim upon which relief can be granted.  This conclusion extends to plaintiff's assertion in paragraph 106 of his second amended complaint: "Prior to the 12-13-99 validation of Mr. Avina, Mr. Avina submits he never received notification, copies of all relevant documents being used against him nor an opportunity to present his position prior to the submission of the validation package, all in violation of clearly established law."

[7] Plaintiff asserts that, under the Due Process Clause of the Fourteenth Amendment, he cannot be validated as a gang member unless those performing the validating are presented with three pieces of independent evidence suggesting plaintiff is a gang member.  Opp'n at 8:15-17.  While it appears that under California regulations a California prisoner cannot be validated as a gang member and therefore subject to indefinite segregated housing unless there are three independent pieces of evidence identifying plaintiff as a gang member, Cal. Code Regs. tit. 15, § 3378(c)(2), plaintiff fails to present any authority for the proposition that an inmate's due process rights are violated unless three pieces of evidence are presented.  Furthermore, such an interpretation would be at odds with Bruce.  Cf. Stewart v. Alameida, 418 F. Supp. 2d 1154, 1167-68 (9th Cir. 2006).

in the record that *could* support the conclusion reached by the disciplinary board" (citing Superintendent v. Hill, 472 U.S. 445, 455-56 (1985) (emphases in original)); Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) (articulating "sufficient indicia of reliability" standard). In Bruce, for example, the court noted three pieces of evidence supported the identification of the plaintiff in that case as a gang member: a sheriff's department report that plaintiff was a gang associate; a probation report indicating that plaintiff's codefendant on the underlying charge had been validated as a gang member; and a statement from a confidential informant. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The court noted that "any one of these three pieces of evidence would have sufficed to support the validation because each has sufficient indicia of reliability." Id.

In this case, one of the items used to validate plaintiff as an NS member by defendants was the report authored by defendant Medellin. In the May 2, 1997 report, defendant Medellin indicates as follows:

1. Medellin searched plaintiff's cell that day and found two documents. One of the documents was a poem titled "Another Day My Mattress Rolled." The other document consisted of "Indian language."

2. Plaintiff admitted the documents were his.

3. According to Medellin, "Another Day My Mattress Rolled" "discloses the outline of teaching discipline, organization, and the ability to identify Northern Structure prison gang members in prison." Medellin also notes "[t]he written document has an identified symbol ($^N/A^S$) Northern Structure Associate."

Defs.' Ex. 7.

/////
/////
/////
/////

1   The poem that Medellin found in plaintiff's possession on May 2, 1997, "Another
2  Day My Mattress Rolled," reads as follows:

3  Disciplined & self controlled
    Focused on our future goals
4  Closely nit within our holes

5  Awareness keeps a sharpened mind
    The one who seeks will surely find
6  Caution first then proceed
    The dedication will succeed

7
    Down to die in this deadly game
8  Never will I seek the fame
    I only want equality
9  So I'll teach my people unity

10  I'll never let them function blind
    They'll be on track & we'll all ignite
11  Machines are built part by part
    To spark desire in the heart

12
    Day by day hand in had
13  Through established chains of strict command
    Shoes are tied in double knots
14  Hope they send out warning shots
    Puro strength us Nortenos display
15  Send the frogs & scrapes to the MTA

16  Back inside on CTD
    I strive to keep my purpose true
17  Vatos come & vatos go
    Some of those you never know

18
    Que has a snitch, he's a punk
19  That one's always on my bunk
    Some homeboys you never see
20  But you feel there love so easily

21  Qualitys are judged on sight
    Where's his mind & will he fight
22  Que where you from, what's your name, where you been
    When you come & why you here

23
    Just another day in here
24  There's to Nortenos down the tier
    I'll let them know a homeboy came
25  All $^N/A^S$ are done the same

26

> I'll sacrifice to give you yours
> Shoes stay on till they lock the doors
>
> Yard a must rain or shine
> Don't be scared to test the nine
>
> Face the struggle strong and bold
> Another day my mattress rolled.

Defs.' Ex. 2.

Plaintiff does not dispute that the copy of this poem found by defendant Medellin belongs to plaintiff. Opp'n at 11:16-21. Rather he challenges the defendants' characterization of the poem as gang-related. Id. at 11:22-24.

Notwithstanding plaintiff's position, plaintiff's admitted possession of "Another Day My Mattress Rolled" constitutes some evidence that plaintiff was affiliated with the NS. A reasonable reading of the poem is that it serves to give guidance to members of a prison gang who refer to themselves as "Nortenos." "Norteno" means "northern" in Spanish. Possession of the poem is thus an indication of NS membership. Defendant Medellin, a correctional officer within CDCR, asserts that "$^N/A^S$" is a symbol of the "Northern Structure" and that symbol is found in the poem. That the material plaintiff possessed incorporated NS symbols or references additionally supports the conclusion that plaintiff was an NS member. In light of the decision in Bruce, the court cannot find that any person who validated plaintiff as a member of the NS did so despite a lack of constitutionally insufficient evidence.[8]  Bruce, 331 F.3d at 1288.

---

[8] Throughout his complaint, and opposition to defendants' motion, plaintiff suggests his possession of "Another Day My Mattress Rolled," and defendant Medellin's interpretation of the poem cannot constitute "some evidence" because when defendant Fischer was presented with this information on March 27, 1998 he found that the material could not be used to validate plaintiff. See, e.g., Opp'n at 11:2-15. Specifically, Fischer found on July 15, 1998 that "Another Day My Mattress Rolled" was not then recognized as NS material. Defs.' Ex. 6. Fischer does not explain why not. Id. In any case, nothing suggests Fischer was not free to change his mind about "Another Day My Mattress Rolled" as Fischer did on December 13, 1999. Defs. Ex. 11. Furthermore, the court's finding that there is some evidence to support the validation of plaintiff as a member of NS is not based simply on the opinion of defendant Fischer. Rather, it is based on the language of "Another Day My Mattress Rolled" and defendant Medellin's interpretation of the meaning of "$^N/A^S$."

Defendants also argue that the remaining defendants are immune from suit with respect to plaintiff's remaining claims. Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Based on the undisputed facts, the remaining defendants did not violate plaintiff's constitutional rights. Therefore, they are immune from suit under the doctrine of "qualified immunity" recognized in Harlow.

F. Conclusion

In light of the foregoing, the court will recommended that all remaining defendants be granted summary judgment with respect to plaintiff's remaining due process claims. The court need not reach the remainder of defendants' arguments asserted in favor of their being granted summary judgment.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' June 12, 2006 "motion to review documents in camera and file them under seal" is denied;

2. Plaintiff's October 2, 2006 motion for the appointment of counsel is denied; and

3. Plaintiff's February 20, 2007 request for leave to file supplemental objections to defendants' statement of undisputed facts is granted.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' June 15, 2006 motion to dismiss and motion for summary judgment be granted; and

2. This case be closed.

/////
/////
/////

1  These findings and recommendations are submitted to the United States District
2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3  days after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6  shall be served and filed within ten days after service of the objections.  The parties are advised
7  that failure to file objections within the specified time may waive the right to appeal the District
8  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: March 1, 2007.

_____
U.S. MAGISTRATE JUDGE

---

1
avin2661.57(a)