IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE AVIÑA,

    Plaintiff,                              No. CIV S-02-2661-FCD KJM P

   vs.

J.C. MEDELLIN, et al.,

    Defendants.                         FINDINGS AND RECOMMENDATIONS

/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action under 42 U.S.C. § 1983. He has alleged that his validation as a gang affiliate by prison officials in 1999 and resulting reassignment to a secured housing unit (SHU) violated his constitutional right to due process under the Fourteenth Amendment and his rights under the First and Eighth Amendments. After this court dismissed the case, the U.S. Court of Appeals for the Ninth Circuit reversed in part and remanded plaintiff's due process claim "so that the district court can determine who were the critical decisionmakers, and whether Aviña received a meaningful opportunity to present his views on the issue of validation." Aviña v. Medellin, No. 07-15740, slip op. (9th Cir. July 27, 2009) (USCA Memorandum) at 3 (see Docket No. 119).

/////

/////

I.      Factual and Procedural background

A gang validation package recommending plaintiff's validation as a gang affiliate was prepared by an Institutional Gang Investigator (IGI) and received on December 13, 1999 by defendant Fischer, a Special Agent in the Law Enforcement Unit for the California Department of Corrections and Rehabilitation (CDCR). Fischer validated plaintiff as a gang affiliate that same day, on December 13, 1999. Four days later, on December 17, the Institutional Classification Committee (ICC) at California State Prison-Sacramento (CSP-S) held a hearing, attended by plaintiff, on the question of plaintiff's reassignment to secured housing due to his validation. The ICC recommended plaintiff be reassigned to segregated housing on the sole basis of his validation. Defendant Rosario, acting as Chief Deputy Warden, concurred with the recommendation. That same day, defendant Aguirre, acting as a Classification Staff Representative (CSR), endorsed the ICC's recommendation, and plaintiff was immediately transferred to the SHU at CSP-Corcoran.

In his second amended complaint, plaintiff alleged, inter alia, the following grounds for his federal due process claim: (1) he did not receive notice that he was being considered for validation or the opportunity to be heard before validation became final; (2) the decision to validate him was based on evidence that had previously been rejected for the same purpose; and (3) the decision to assign him to the SHU was not based on the due process minimum of "some evidence." See Second Am. Compl. ¶¶ 56-59, 126-129. Defendants filed a combined motion to dismiss and for summary judgment on June 15, 2006. See Docket Nos. 68-71. Defendants asserted that all but the federal due process claim should be dismissed under Rule 12(b) because plaintiff had failed to exhaust his administrative remedies. As for the due process claim, they argued summary judgment was appropriate because plaintiff's validation as a gang member was supported by "some evidence." This court agreed with both arguments. On March 30, 2007, the court adopted the findings and recommendations that the

/////

combined motion should be granted and the case closed. See Docket Nos. 105, 107. Plaintiff appealed.

      A.      The Ninth Circuit's remand

In its order of remand, the Ninth Circuit found this court had ruled erroneously that plaintiff failed to exhaust administrative remedies for the due process claim "that he received insufficient opportunity to be heard before his confinement in the SHU because he did not have an opportunity to meet with the Institutional Gang Investigator ('IGI') prior to his validation." USCA Memorandum at 2.[1] As noted, the Ninth Circuit has directed this court to determine who made the validation decision and whether plaintiff received a meaningful opportunity to present his views. Id. at 3. The Ninth Circuit also said that "[b]ecause Aviña may have been denied an opportunity to be heard in connection with his validation and transfer [to the SHU], we do not reach the district court's determination that 'some evidence' supported Aviña's validation." Id. The appellate panel affirmed the dismissal of plaintiff's First and Eighth Amendment claims. Id.

/////

/////

---

[1] In fact, the findings and recommendations reviewed by the Ninth Circuit do conclude that plaintiff had exhausted his claim that defendant Fischer violated his right to due process in the decision to validate him as a gang affiliate. See Findings and Recommendations (Docket No. 105) at 4-5. The court based this ruling in part on a finding that there was no substantive distinction between claims plaintiff raised in a March 2000 grievance, which was fully exhausted, and an April 2002 grievance, which "would not serve to exhaust administrative remedies with respect to any issues not otherwise covered by the March 14, 2000 grievance." Id. at 3 n.2. The court thus made no distinction in its exhaustion analysis between plaintiff's allegation that defendant Fischer did not base his validation decision on "some evidence" and plaintiff's allegation that he never received notice or an opportunity to be heard before that decision was final. However, the court did draw that distinction later, when it reached the merits and found that any assertion other than the "some evidence" claim failed to state a claim on which relief could be granted. Id. at 10 n.6. As the court put it then, "[t]his conclusion extends to plaintiff's assertion in paragraph 106 of his second amended complaint" that he did not receive notice of or an opportunity to be heard on the validation process prior to validation becoming final. Id. The court's dismissal of plaintiff's claim that he should have received notice and a hearing was therefore the equivalent of a 12(b)(6) ruling, not a ruling that he had failed to exhaust. Nevertheless, the instruction in the Ninth Circuit's order is clear: the court must address the predicate issue of plaintiff's notice and the opportunity to be heard before his validation and reassignment became final.

B.    Post-remand Proceedings

On November 13, 2009, following remand, this court issued an order setting the case for trial on the due process claim. Order (Docket No. 122) at 1-2. In the same order, the court allowed all parties thirty days "in which to request any pre-trial relief they deem is warranted under the Federal Rules of Civil Procedure and the Local Rules of this court." Id. at 2.

Defendants responded to the court's order with a "Request for Pre-Trial Relief," in which they request "summary adjudication of the sole remaining claim in this action" and re-incorporate by summary reference the arguments they presented in their original motion for summary judgment more than four years ago. Defs.' Motion (Docket No. 123) at 1. Defendants' motion literally seeks, as the court allowed in its order, "pre-trial relief," but it does not invoke any federal or local rule of procedure, as the court also required. However, a request to "revisit" an earlier ruling bears some resemblance to a motion for reconsideration under Rule 59 or 60. Even if the motion is so construed, for the reasons discussed in the court's prior analysis of plaintiff's due process claim, the court will recommend that it be denied.

For his part, plaintiff has moved for summary judgment under Rule 56. See Pl.'s Mot. (Docket No. 125) at 2.[2] Instead of responding to the merits of plaintiff's motion, defendants oppose it on the ground that "the time to file a dispositive motion in this case expired three and a half years ago." Defs.' Opp'n (Docket No. 126) at 1. This argument ignores the intervening appeal, reversal and remand, and the court's November 12, 2009 order. Plaintiff's motion stands as effectively unopposed.

II.    Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[2] Plaintiff also moved to re-open discovery and for the appointment of counsel. The court has already denied those requests. See Docket No. 130.

4

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

The opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

    A.    <u>Analysis</u>

The Ninth Circuit stated in its order of remand, "[d]ue process entitles a prisoner to an opportunity to present his views to the critical decisionmaker responsible for the administrative segregation decision, which ordinarily is the IGI." USCA Memorandum at 3 (citing Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990)). The Ninth Circuit went on to determine one fact of record and instruct the court as previously noted: "Aviña did not receive a

1  hearing before the IGI.  Accordingly, we remand so the district court can determine who were the
2  critical decisionmakers, and whether Aviña received a meaningful opportunity to present his
3  views on the issue of validation." Id.  The court also noted another possible due process
4  violation in stating, "Aviña may have been denied an opportunity to be heard in connection with
5  his validation and transfer." Id.  On remand, then, this court will examine the process afforded
6  plaintiff in his validation as a gang associate and in his transfer to the SHU.

           1.       The Validation Process

8          When an inmate is validated as a gang member in California's state prison system,
9  the inmate must receive notice and be heard, at least informally, by the official who is
10 considering validating the prisoner as a gang member.  See Stewart v. Alameida, 418 F.Supp.2d
11 1154, 1165 (N.D. Cal. 2006) (before validation, inmate entitled to informal hearing with IGI).  In
12 many cases, the IGI is the critical decisionmaker in the validation process.  Cf. Toussaint, 926
13 F.2d at 803; see Madrid v. Gomez, 889 F.Supp. 1146, 1276 (N.D. Cal. 1995).  Even if the IGI
14 concludes that an inmate should be validated as a gang affiliate, that conclusion is subject to
15 review and either approval or rejection.  15 Cal. Code Regs. § 3378(c)(6).  The package
16 submitted to the reviewer is required to document an interview with the inmate, for which the
17 inmate must receive at least 24 hours' advance notice.  15 Cal. Code Regs. §  3378(c)(6)(A)-(D).

18         There is no dispute that defendant Fischer was the person charged with reviewing
19 the validation package prepared by the IGI in this case.  See Second Am. Compl., Ex. H; Defs.'
20 Undisputed Facts (DUF) (Docket No. 69) ¶¶ 23-24; Pl.'s Mot., Ex. J.  As the Ninth Circuit
21 determined, plaintiff did not have an opportunity to present his views to the IGI.  The question
22 left open by the Ninth Circuit's remand is whether some other person or entity was the critical
23 decisionmaker before whom plaintiff might have had adequate notice and opportunity to object
24 to validation.

25         In support of his motion for summary judgment, plaintiff submits an affidavit,
26 signed under penalty of perjury, stating that his first notice of validation came on December 16,

1999, three days after the validation decision was final.  See Pl.'s Decl. ¶¶ 20-21.  (Docket No. 125-1).  He states that before that time he never received any documents used against him nor was he provided an opportunity to present his views prior to being validated.[3]  Id. ¶ 21.  He states that when he attended the ICC hearing on December 17, where the issue of housing reassignment was considered, he was asked if he knew the reason for the hearing and replied that he did not, but that he believed it was because of a hunger strike in which he was participating.  Id. ¶ 26.  He further states that when he told the ICC he "did not know what was going on and [was] never notified about any of this[,] I was told I was already validated and it was out of their hands."  Id. ¶ 27.  Notations on the record of the hearing corroborate plaintiff's account of what he said then: "[Inmate] stated he did not understand why he was being transferred.  [Inmate] was given explanation regarding validation process and the need for transfer based on validation.  He then understood but did not agree."  Pl.'s Mot., Ex. K.  That document also refers to validation as having already occurred on December 13: "your case factors are being reviewed for transfer to a security housing unit due to you recently being validated as a prison gang member or associate (See CDC 128B-2 dated 12/13/99...)."  Id.

Plaintiff's evidence points to defendant Fischer as the final critical decisionmaker who confirmed the IGI's initial recommendation in the validation process, before the ICC hearing.  While the court in Madrid downplayed the role of the reviewer in that case, as playing a "technically important but substantively nominal" role, Madrid, 889 F.Supp. at 1276, here the

---

[3] In defendants' 2006 statement of undisputed facts, they state that "[o]n or around December 2, 1999," two assistant IGIs each "filled out a CDC 1030 Confidential Disclosure form indicating the reliability of the source and the nature of the information... that formed part of the validation package" that those investigators submitted to Special Agent Fischer on December 13, 1999.  DUF ¶¶ 23-24.  In their brief in support of summary judgment, defendants say plaintiff was provided both of those documents on December 2.  Defs.' Memorandum at 10.  However, defendants' statement of undisputed facts says only, "Aviña was provided a copy of the Confidential Information Disclosure forms....," without indicating a date when plaintiff was provided these forms.  DUF ¶ 25.  The documents themselves are dated December 2, 1999, and one of them directly addresses plaintiff, but neither bears any conclusive record of when, if ever, plaintiff received them.  DUF Exs. 12-13.

record indicates Fischer was no mere rubber stamp, for he had previously rejected a gang validation recommendation submitted with respect to plaintiff in July 1998. DUF ¶ 18. In this case, Fischer himself was the final "critical decisionmaker." For their part, defendants offer nothing in response to the Ninth Circuit's question in this regard. The only other potential decisionmaker in the validation process in this case is the ICC, but the evidence shows that validation was a closed question by the time plaintiff appeared before the ICC on December 17.

The court finds, therefore, that defendant Fischer, in reviewing the IGI's gang validation package, was the critical decisionmaker in the validation process. Because plaintiff never had the opportunity to express his views on validation to the IGI, as established in the record and determined by the Ninth Circuit, and nothing in the record indicates Fischer performed all the requirements of his job as reviewer either by interviewing plaintiff himself or by confirming that inmate was provided an interview by the IGI, summary judgment should be granted for plaintiff on his claim that defendant Fischer violated plaintiff's right under the Fourteenth Amendment for failing to ensure him the process due before confirming the validation decision.

    2. <u>Plaintiff's Reassignment to the SHU</u>

An inmate has a right to due process when prison officials consider him for an adverse housing assignment. What process is constitutionally due an inmate placed in segregation depends on whether the placement is disciplinary or administrative. <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1099 (9th Cir. 1986). In <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1287 (9th Cir. 2003), the Court of Appeals determined that California's policy of placing suspected gang members in segregation is an administrative decision, undertaken to preserve order in the prison.

/////
/////
/////
/////

When an inmate is placed in segregation for administrative purposes, due process requires only the following procedures:

> Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views. . . . [D]ue process [ ] does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation.

Toussaint, 801 F.2d at 1100-01 (footnote omitted).

There is no dispute that plaintiff attended a hearing of the ICC at which he presented his objections to being reassigned to the SHU. Whether he received adequate notice, allowing for a meaningful hearing, is a separate question. Due process does not require detailed written notice of charges in this context, but some form of notice is mandatory. Hewitt v. Helms, 459 U.S. 460, 476 (1983).

As discussed above, plaintiff swears he knew nothing about validation until December 16, 1999, three days after Fischer formally validated him. Pl.'s Decl. ¶ 20. That timing puts plaintiff's notice of validation approximately one day before the ICC hearing. It does not necessarily follow that plaintiff then knew that officials were considering him for reassignment or why he had already been validated. There is evidence to support plaintiff's case that he did not have adequate notice before the hearing: his sworn statement says he did not know going into the hearing "what was going on," and the record of the hearing shows that plaintiff stated "he did not understand why he was being transferred." Id. ¶ 27; Pl.'s Ex. K. According to the record of the hearing, plaintiff "was given explanation regarding validation process and the need for transfer based on validation. He then understood but did not agree." Pl.'s Ex. K.

Plaintiff has also submitted CDC Form 128-G, an endorsement of the ICC's decision signed by defendant Aguirre on December 17, 1999. That document states in part: "due to a state of emergency, [plaintiff] did not receive 72-hour notice of the classification hearing

1  which resulted in his transfer.  Pursuant to requirements of CCR Section 3375, receiving
2  institution to ensure the inmate receives appropriate advance notice of his initial classification
3  hearing."  Pl.'s Mot., Ex. L.  While seventy-two hours' notice is mandatory under the state
4  regulation, that time period is not mandatory as a minimum of due process in prison housing
5  reassignment cases.

6         The precise requirements of due process often depend on the particular
7  circumstances of a plaintiff's situation, but "[t]he fundamental requirement of due process is the
8  opportunity to be heard at a meaningful time and in a meaningful manner."  Mathews v.
9  Eldridge, 424 U.S. 319, 333 (1976); see also Wilkinson v. Austin, 545 U.S. 209, 226 (2005) (due
10 process means "a fair opportunity for rebuttal"); Madrid v. Gomez, 889 F.Supp. 1146, 1276-77
11 (N.D. Cal. 1995).  The Madrid court observed that there is the potential for ICC proceedings in
12 the gang validation context to be "hollow gestures" because of prison policies toward gang
13 activity and because "[gang] validation is usually the functional equivalent of deciding that the
14 inmate will be transferred to the SHU for gang affiliation."  Madrid, 889 F.Supp. at 1276-77.[4]

15        Here there is sufficient evidence that the ICC hearing was not conducted "at a
16 meaningful time and in a meaningful manner" so as to provide plaintiff a "fair opportunity for
17 rebuttal."  Again, there is no dispute that plaintiff never received a hearing before the IGI or
18 Fischer.  It is apparent, on the record in this case, that Fischer's validation was indeed the
19 "functional equivalent of deciding that the inmate will be transferred to the SHU for gang
20 affiliation."  Cf. id. at 1277.  Plaintiff's unrebutted account of the hearing supports this view.  If
21 plaintiff had no notice or opportunity to be heard before "the functional equivalent" of the
22 decision to transfer him to the SHU, then the actual hearing at which prison officials addressed
23 that issue with plaintiff cannot be anything but a "hollow gesture."
24 /////

---

[4] The Madrid court found, however, that the plaintiffs in that case had not presented sufficient information showing that ICC hearings in general were "perfunctory formalities." Id.

11

The circumstances demonstrated by the record in this case favor granting summary judgment for plaintiff on his claim that the ICC did not provide him a meaningful opportunity to be heard on his adverse housing reassignment and thus violated his right to due process.

The record, such as it is, does not clarify which defendants were involved in the decision to reassign plaintiff to the SHU and which were not. The CDC 128-G classification chrono that documents the hearing before the ICC lists the names L. Howell, J. Walker and C. Mozam as committee members and T. Goughnour as chairperson. See Pl.'s Ex. K. Plaintiff has not named any of these individuals as a defendant. He has named T. Rosario, the chief deputy warden, who signed the placement chrono to indicate his concurrence with the ICC's action. Id. He has also named M. Aguirre, the CSR who endorsed the ICC's decision and effected plaintiff's immediate transfer to the SHU at CSP-Corcoran. DUF Exs. 15, 19. The court finds that plaintiff has carried his initial burden on summary judgment as to defendants Rosario and Aguirre by presenting documents that indicate their involvement in reassigning plaintiff to segregated housing.

Defendants present no facts or arguments to the contrary. DUF ¶¶ 27, 29. The court should grant plaintiff's motion for summary judgment as to Rosario and Aguirre on plaintiff's claim that he was reassigned to the SHU without due process.

3.  The "some evidence" requirement

In Bruce v. Ylst, 351 F.3d at 1287, the Ninth Circuit held that a determination that a California inmate is a gang member, and therefore appropriate for assignment to an indefinite term in segregated housing, must be supported by "some evidence." The requirement of "some evidence" sets a low bar, consistent with the recognition that assignment of inmates within prisons is "essentially a matter of administrative discretion," subject to "minimal legal limitations." Id. (citation omitted). Even just one piece of evidence may be sufficient to meet the "some evidence" requirement, if that evidence has "sufficient indicia of reliability." Id. at

1288; Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (holding that the "relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board" (citing Superintendent v. Hill, 472 U.S. 445, 455-56 (1985) (emphases in original)); Toussaint, 926 F.2d at 803 (articulating "sufficient indicia of reliability" standard).

In its consideration of defendants' motion for summary judgment in 2007, the court found there was "some evidence" to support the decision to validate plaintiff as a gang affiliate. See Findings and Recommendations (Docket No. 105) at 10-13. The court did not address the predicate issue of whether plaintiff had received adequate notice and the opportunity to be heard before the IGI and ICC, as the Ninth Circuit observed: "[b]ecause Aviña may have been denied an opportunity to be heard in connection with his validation and transfer, we do not reach the district court's determination that 'some evidence' supported Aviña's validation." USCA Memorandum at 3.

In light of plaintiff's having been denied a fair opportunity to rebut the evidence used to validate him and place him in administrative segregation, any substantive analysis of whether the evidence used to validate plaintiff carries the required "indicia of reliability" is moot. The court should vacate its previous finding that "some evidence" supported validating plaintiff as a gang member.

IV.   Qualified Immunity

The court addresses the issue of qualified immunity sua sponte where, as here, defendants have preserved the defense in their answer. Graves v. City of Couer d'Alene, 339 F.3d 828, 846 (9th Cir. 2003) (raising qualified immunity sua sponte on appeal, where defendants had asserted it in their answer), abrogated on other grounds by Hiibel v. Sixth Judicial Dist. Court of Nev., 542 U.S. 177 (2004); Sonoda v. Cabrera, 255 F.3d 1035, 1040 n.2 (9th Cir. 2001) (reviewing district court's sua sponte grant of qualified immunity on summary judgment, where the defense was preserved in the answer). Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court considers two questions. One is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001). A negative answer ends the analysis, with qualified immunity protecting defendant from liability. Id. If a constitutional violation occurred, a court further inquires "whether the right was clearly established." Id. "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202. The inquiry into whether a right was clearly established "must be taken in light of the specific context of the case, not as a broad general proposition." Id. at 201. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The court may decide the order of addressing the two prongs of a qualified immunity analysis in accordance with fairness and efficiency and in light of the circumstances of a particular case. Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808 (2009). Given the particular circumstances of this case, this court sees no reason to depart from the traditional order of analysis presented in Saucier.

Based on the foregoing analysis of plaintiff's summary judgment evidence, the court has concluded that defendants Fischer, Rosario and Aguirre violated plaintiff's right to due process. Furthermore, it was well established at the time of plaintiff's validation and his reassignment to the SHU that he had a due process right to notice of the reasons for validation and reassignment and a right to a meaningful hearing on each of those issues. See Toussaint, 926 F.2d at 803; Hewitt, 459 U.S. at 476. Defendants are not entitled to qualified immunity.

V.     Relief

Plaintiff seeks several forms of relief: (1) an order from this court that the 1999 gang validation and all related documents be expunged from CDCR records and that the expungement "be reported to all gang-related law enforcement data bases and clearing houses to which the original validation was reported previously;" (2) an order that plaintiff be reassigned to the general prison population; (3) a declaratory judgment that plaintiff was validated as a gang member in violation of his civil rights; and (4) compensatory and punitive damages. See Mot. at 15-16.

A.     Injunctive and Declaratory Relief

The court should order defendant Fischer, or his successor in interest, to expunge the gang validation of December 13, 1999, and all related documents from plaintiff's central file with the CDCR. See Lira v. California Dep't. of Corrections, 2008 WL 619017 at *13 (N.D.Cal.). However, the court should not order that the expungement "be reported to all gang-related law enforcement data bases and clearing houses to which the original validation was reported previously[.]" Mot. at 15-16. Plaintiff has provided no evidence of any such reporting to other law enforcement agencies, and his ongoing incarceration with CDCR suggests no existing or imminent injury even if information about his validation has been shared outside CDCR. The court also should decline to grant injunctive relief to order plaintiff reassigned to general housing. Although expungement of the 1999 validation would remove that ground for placing plaintiff in segregated housing at that time, expungement does not mean that prison officials do not currently have other grounds for keeping plaintiff in the SHU.

Having found that judgment and partial injunctive relief for plaintiff is warranted, the court should deny plaintiff's request for declaratory relief under the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201. District courts have broad discretion to decide whether to render a declaratory judgment. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007). "There are circumstances in which 'considerations of practicality and wise judicial administration'

warrant refusal to exercise declaratory relief jurisdiction[.]" Shapiro v. Jupiterimages Corp., 2008 WL 183511 at *1 (N.D.Cal.) (citation omitted). The Ninth Circuit has held that

> when a trial court reaches the conclusion... that judgment should be granted against the actor in the lawsuit, it would be an illusory act to grant a further declaration of rights... A declaration of rights, after such conclusion, would [serve] no useful purpose. And it is an accepted principle that no declaration should be made, unless it serve a useful, practical purpose, or when no beneficial result would follow.

Exxon Shipping Co. v. Airport Depot Diner, Inc. 120 F.3d 166, 169 (9th Cir. 1997) (quoting United States v. Jones, 176 F.2d 278, 280 (9th Cir. 1949)). "Where a district court has before it a declaratory judgment action, and decides the common issues in the direct action, it may exercise its discretion to dismiss the declaratory judgment complaint." In re Orion Pictures Corp., 4 F.3d 1095, 1100 (2nd Cir. 1993).

Here, a declaratory judgment would be "superfluous" to the court's conclusion that judgment should be granted against defendant Fischer for violating plaintiff's right to due process. See Exxon Shipping Co., 120 F.3d at 169. Therefore, the court should deny plaintiff's request for a declaratory judgment.

  B.  Damages

The purpose of a damages award under § 1983 is to provide compensation for injuries caused by the violation of a plaintiff's legal rights. See Memphis Com. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986). No compensatory damages may be awarded absent proof of actual injury. Id. at 307. Here, plaintiff demands compensatory damages in the amount of $35.00 for every day he has spent in administrative segregation since his validation. As of the day he filed his motion for summary judgment, the amount of such a per diem award would have been $117,435.00. See Mot. at 16. However, plaintiff provides no basis for the per diem amount or the calculation, nor does he present any evidence of actual injury. The court should not award compensatory damages.

/////

"A plaintiff may prove a violation of § 1983 without demonstrating that the deprivation of his or her constitutional rights caused any actual harm." Estate of Macias v. Ihde, 219 F.3d 1018, 1028 (9th Cir. 2000). "[N]ominal damages are normally awarded when a plaintiff is unable to demonstrate an entitlement to compensatory damages." Schneider v. County of San Diego, 285 F.3d 784, 795 (9th Cir. 2002). The award of nominal damages in § 1983 cases is mandatory as "symbolic vindication" of a plaintiff's constitutional rights, whether or not he has been physically injured. Id. at 794. "[N]ominal damages must be awarded if a plaintiff proves a violation of his constitutional rights." Estate of Macias, 219 F.3d at 1028 (citation omitted). Plaintiff should be awarded nominal damages in the amount of $1.00.

Once nominal damages are awarded, a court may consider a punitive damages award under § 1997e(e). See Oliver v. Keller, 289 F.3d 623, 629-30 (9th Cir. 2002). The standard for punitive damages in civil rights cases mirrors the standard for punitive damages under common law tort cases. See Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005). "[M]alicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and foster 'deterrence and punishment over and above that provided by compensatory awards.'" Id. at 807 (quoting Smith v. Wade, 461 U.S. 30, 54 (1983)). Plaintiff presents no evidence in this case that the violation of his right to due process was the result of malice, wantonness or oppressiveness on the part of any defendant against whom summary judgment is recommended. Punitive damages should not be awarded.

IT IS THEREFORE RECOMMENDED that:

1. Defendants' motion for pre-trial relief (Docket No. 123), construed by the court as a motion to reconsider, be denied.

2. Plaintiff's motion for summary judgment (Docket No. 125) be granted as to defendants Fischer, Rosario and Aguirre.

3. The court vacate its previous finding that "some evidence" supported plaintiff's validation as a gang affiliate (Docket Nos. 105 and 107).

4. The court order defendant Fischer or his successor to expunge plaintiff's validation as a gang associate and all related documents from plaintiff's central file within thirty days of the date of this order and provide plaintiff with documented proof that expungement has occurred no later than thirty days after defendant Fischer or his successor has complied with this order.

5. All other requests for injunctive relief be denied.

6. Plaintiff's request for declaratory relief be denied.

7. The court award plaintiff nominal damages of $1.00.

8. The court decline to award compensatory and punitive damages.

9. The court enter final judgment against defendants Fischer, Rosario and Aguirre.

10. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  **If a party does not plan to file objections or a reply that party is encouraged to file a prompt notice informing the court of as much.**

DATED:  September 3, 2010.

_____
U.S. MAGISTRATE JUDGE

4 avin2661.57